Ruffin, C. J.
 

 The first question for our consideration is upon the admissibility of the record of the court of South Carolina, to the authentication of which, by the clerk of that court, objection is made. That document purports on its face to be, not an abstract or extract of a part of the record of a suit, but a full memorial cf ail that was done in the suit, from beginning to end. It begins with the writ in tro-ver, contains a declaration, a plea of not guilty and issue thereon, and the
 
 postea,
 
 setting forth a venire facias, the return of it to the court, the appearance and empanuelling of the jury, a verdict for the plaintiff anda judgment for the damages assessed and costs, and execution therefor with satisfaction returned. To this is annexed, under the seal of the court, a certificate of J. B, the clerk of the court, “that the annexed are correct transcripts of the original proceedings filed in this office in the suit of William Todd, administrator, against William Lee;” and to that is added the certificate of the presiding judge of the court, “ that J. B., who gave the attestation above set forth, is the clerk of the said court and keeper of the records thereof, and that said attestation is in due form.” To this it is objected, that the clerk’s certificate does not state that the transcript furnished by him is a copy of
 
 the record
 
 of the cause between those parties; and it may fee, that this is only a transcript of a
 
 part
 
 of the record or of
 
 *445
 
 minutes of the court, not engrossed in the record. Rut, it seems to us, the objection is over nice, and that the atiesta-tions are substantially in conformity with the act of Congress. The proceedings certified do not appear to be minutes or a portion only of what the court did in that matter, but in themselves import to be a complete history of a suit from its commencement to its termination. When the proper officer gives his testimonial, that the annexed are
 
 correct transcripts of the proceedings,
 
 we must suppose that they are transcripts of
 
 all
 
 the proceedings in that cause: in other words, of the whole record. But, however we might be disposed to cavil at the particular wording of this certificate, we must receive it, inasmuch as its correctness, according to the law of South Carolina, is vouched by the judge of the court, who certifies that it
 
 is
 
 in
 
 due
 
 form; and such certificate is made conclusive by the act of Congress. We therefore think, the record was properly admitted. We will next proceed to notice the other grounds taken on the part of the. defendant.
 

 The first depended merely upon a question of fact, which was left by his Honor to the jury, and with which this court cannot meddle.
 

 Next it is said, that the covenant of warranty of title in the bill of sale from Gold to Harris is but a covenant for quiet enjoyment, and was not broken by a recovery of the value of the slave in an action of trover by the true owner, because it was not an eviction. But, unquestionably, it is tantamount to eviction. It is a loss of the property by. the cov-enantee, who is by a legal compulsion under a necessity to pay the value to the true owner, and thus purchase the same slave a second time. Upon a proper covenant of quiet enjoyment annexed to land, we held that an adverse possession under the better title was the same as eviction, although the bargainee was never in possession under his deed, and so was not actually evicted.
 
 Grist
 
 v
 
 Hodges,
 
 3 Dev. 198. So, here, to all intents and purposes, the covenantee has lost all benefit of his purchase from the defendant’s intestate; which purchase the latter bound himself to make good.
 

 But it is further said, that this action will not lie in the
 
 *446
 
 name of the administrator, because the breach, if any, did not occur in the time of the intestate. But the answer is. that, although that rule may be true as regards covenants relating to the freehold, yet in respect of debts, personal covenants, and, indeed, all personalties, the administrator fully represents his intestate, and may have all actions touching the same, which the intestate himself might have had. The law assigns to the executor not only the property of the testator, but, also all personal actions and the causes of such actions. Went. Off. Ex’r 159. It is true, a covenant of this sort, touching a personal chattel, does not attach itself to the chattel, or run with it, as it is called, as a like covenant does with realty; and therefore the assignee of the personal property canno't sue on a covenant of warranty to his vendor. But if such assignee be evicted by title paramount, he may have recourse to his assignor; and the latter again, after making satisfaction, may fall back on the original v.endor to himself to recover in damages what he has been compelled to pay by reasou of the defective title wairanted. Thus it is in cases of covenants of warranty in conveyances of land, where a second purchaser does not sue on the covenant of the original vendor, but is re-imbursed by his immediate vendor: then the latter may recover from the first.
 
 Herrin
 
 v
 
 McEntyre.
 
 1 Hawks 410.
 
 Markland
 
 v Crump, 1 Dev. & Bat. 94. Much more must that be so in respect of personal covenants, which are not susceptible of assignment by act of the parties. Therefore, this action will lie by the personal representatives of the intestate Harris; provided the intestate or his estate hath sustained the injury against which the covenant was intended to be an indemnity; which brings us to another question raised in the argument.
 

 It was further contended, that as the action of trover was brought against the defendant in his own right and not in the character of administrator, he must now sue in his own right; or, at all events, that he cannot recover in his name as administrator, for two reasons; the one, that no damage is shewn to the intestate, because the recovery was paid out of the present plaintiff’s own money; and the other, that if he can sue as administrator, his co-administrator in South Car-
 
 *447
 
 aliña should have been joined with him. Our opinion is against the defendant, notwithstanding these objections a'so. As to the form of the action in South Carolina, it could have been no otherwise. The plaintiff Lee, had the possession of the negro, and of course, the conversion, complained of in that action, was
 
 his
 
 conversion and not that of his intestate, or necessarily, that of his co-administrator. But he held the negro as assets of his intestate, recovered and left by the latter as a part of his estate. Although he was bound by the judgment to pay, at all events, and out of his own money, the recovery therein made from him, yet, as between him and the estate, he was undoubtedly entitled to make such payment out of the assets, if he had sufficient in his hands, or to reimburse himself out of any that might thereafter come to his hands. As he could not sue himself, the law works the satisfaction between the person who had thus a claim against the estate, and the estate. And, therefore, in substance and reality, the damages were paid out of the assets, or re-imbursed out of them; and it is immaterial which, for in either case the intestate’s personal estate has sustained the damage for which this suit was brought. It follows, that the suit must be brought by the administrator, as such. Indeed, it is quite clear, as before mentioned, that personal covenants of this kind are not assignable but by act of law, as to the executor or administrator as such. Lee could not have sued, therefore, in his own right. Neither would it have been proper to unite Yereen, the other administrator in South Carolina, with him. If they were suing here for the negro himself, of which they had been in possession in their own State, they might have maintained an action by the two jointly; because there they declare on their own possession, and do not name themselves administrators or make profert of their letters.
 
 Leake
 
 v Gilchrist, 2 Dev. 93. The property would there be vested in both, by virtue of the possession in South Carolina under the administration. But the present is an action for damages for what has never been in possession; which will lie only in the name of an administrator. And as an administration in another State is not recognized in our courts, as an authority to sue here, Yereen
 
 *448
 
 is, 0f course, not an administrator in our view, but
 
 the
 
 pre.sent plaintiff solelv.. The demand, which is the subject of this action, arose, it is true, out of transactions occurring in-South Carolina; but when it is sought to be enforced in North Carolina, it can be done only by him or those who have obtained administration here, as is too well settled to require the support,of authorities. The action was, we think, properly brought by the present plaintiff and in his representative character.
 

 Then as to the act of limitations of 1789 for the protection of administrators and executors; it is plain, that it does not bar. The ease does not state when the defendant administered. Its language is, that Gold died
 
 “
 
 shortly after” he conveyed to Harris, and, that administration was “soon afterwards” taken by the defendant; which is too indefinite to found a bar of the statute. But if that was out of the way, the answer is equally complete, that the present suit was brought within the same month in which the plaintiff took administration here; and the statute did not begiu to run until that event.
 
 Grubb’s Administrator
 
 v
 
 Clayton’s
 
 Executor,
 
 2
 
 Hay. 378.
 
 Jones
 
 v
 
 Brodie,
 
 3 Murp. 354.
 

 Per Curiam, Judgment affirmed.